15 minutes to be shared by Appellees. Mr. Jarrett, for Appellant. Good afternoon. May it please the Court, my name is Ernest Jarrett. I'm here on behalf of the Plaintiff's Appellants, and I would like to reserve four minutes for my rebuttal. In this matter, the Court granted summary judgment based upon the doctrine of qualified immunity, and specifically with respect to the participation of civilians in this law enforcement effort in the execution of a search warrant, the Court relied almost exclusively on Bray v. Planned Parenthood, an opinion from this Court in 2014. I believe that the Court's reliance on Bray was erroneous for a couple of reasons. First of all, one of the primary reasons that the Court felt that Bray was applicable was that it couched the issue at all times in the form of law enforcement requesting the assistance of these private citizens who were all Blue Cross Blue Shield investigators. It is a disputed fact, and we had no discovery in the course of this action to develop the issue. The only discovery that was available to my clients came in the context of the criminal proceedings in the requested the assistance of the Blue Cross Blue Shield investigators, but rather that it was the Blue Cross Blue Shield investigators who approached law enforcement with an expectation that they would, in fact, participate. The testimony... They approached them that they would participate. They approached them first with, in effect, a complaint of a crime, right, or a possible crime. Well, I believe it all occurred simultaneously within the course of one meeting, that the approach was we have this audit, and the audit suggests to us that there has been improper billing, and we routinely participate in search warrant executions. I think that if you looked at the testimony of Mr. Kastelein, contrary to the testimony of Lisa G. Cram, who indicated that she requested Blue Cross Blue Shield's assistance, Mr. Kastelein indicated that it was, quote, a mutual decision, and that he indicated in fact that he had, in fact, approached and suggested that they had participated, Blue Cross Blue Shield that is, in other search warrant executions. And so the issue, I believe, it was very disputed as to whether or not law enforcement was seeking the assistance of Blue Cross Blue Shield, or if Blue Cross Blue Shield was using law enforcement as their private collections agents. Again, as with any citizen complaint, the prosecution, the police, had to decide that it was worth investigating and that there was, in fact, probable cause. Just as an example of a case I heard of, somebody comes and says, so-and-so has stolen certain high-tech tools that I own, and he tells them where he thinks they are. The police could decide to put him off, to decide he isn't credible. The police have to decide to go to the trouble of getting the warrant because they believe that there is probable cause, and they have to go to a magistrate. They don't just sit down with Blue Cross and go off and search somebody, right? Well, that's true, Your Honor, but the issue here is not so much whether there should have been a request for the warrant. Arguably, there may have been sufficient evidence to produce probable cause for the warrant. The issue here is whether or not the participation of the civilian Blue Cross Blue Shield investigators did or did not violate my client's constitutional rights. Okay, and the question there is, as a legal matter, does it have to be completely divorced from Blue Cross? That is, if it helps Blue Cross to one percent, does that make it illegal? Or if it's clear that it would be somewhat helpful to the police, even though it might also be helpful to Blue Cross, what's the standard there? I think the standard in this circuit was set forth in Bills v. Azotine, which is at 958 Fed Second, 697, and specifically at page 706. This court held that civilian assistance may not be for any purpose other than law enforcement purposes. And that opinion is very consistent with the Supreme Court's holding in Wilson v. Lane, where the Supreme Court indicated that a third party may not be part of a raid when it's not in the aid of law enforcement. In 614, when the presence was not in aid of the execution of the warrant, but if it is Isn't that really the issue we have here? That is, it seems, at least to this judge, pretty clear that having the Blue Cross people there was useful to the police. It was also useful to Blue Cross. That's what we have to look at, in my view, but I'm asking you. Excuse me, I'm sorry. No, go ahead. I think, again, we have to go back to the testimony here, and that is that the Blue Cross law enforcement officers were merely spectators to Blue Cross Blue Shield doing what they wanted to. It was Blue Cross Blue Shield that conducted all of the interviews of the patients and the employees that were present at the scene. It was Blue Cross Blue Shield that went through the entire premises at the office. It was Mr. Castellan himself who went and found and seized items that were not particularized in the search warrant, such as my client's passport, his records of property ownership in Jamaica, bank records from a bank in Antigua. It was not law enforcement being aided by Blue Cross Blue Shield. It was law enforcement offering their badges to allow access by Blue Cross Blue Shield to do all these things that they would not have done. Wouldn't that carry more force if, in fact, there were no indictments that took place or that your client, Argyle, did not plead guilty to an offense? I mean, the fact there was an indictment and there was a guilty plea, so how does that consquare with, well, this was all just Blue Cross pursuing it? This was, there were six, or excuse me, four criminal defendants in the case, and Argyle pled no contest to one count of a multi-count complaint against it. There was dismissal as it related to all of the other defendants. Well, but your client, the individuals, owned Argyle, did they not? Well, my client owns Argyle, Dr. Sampson, but his wife had no ownership interests. She was a criminal defendant as well. But again, the issue here I don't think is the participation of the Blue Cross Blue Shield people who came onto the premises and seized items that were far beyond the scope of the search warrant itself. There was nothing that said go in and take his passport. There was nothing that said go in and take indications of... Was there a specific challenge to those items, and was that found by a court to be beyond the scope of the warrant? There was a challenge to the participation of the Blue Cross Blue Shield investigators. And part of that challenge was that the investigators did conduct all the interviews, and that they did seize things outside of... That was saying that the things that were seized were outside the scope. But there was that challenge as well within the context of that overall... Which was then resolved in what direction? Well, the resolution for the purposes of the evidentiary hearing was that the Blue Cross Blue Shield participation was not unconstitutional per se. And, excuse me, when I add per se, I am quoting the circuit court judge. But as I indicated in my reply brief, that was an issue that could not have been appealed by my clients because of... I'm sorry, but that's not an answer to the question... I'm sorry. ...to the question, were the items that you adverted to, the passport and so on, found by the court to be beyond the scope of the warrant? You asserted they were, and you might or might not be right, but was that litigated, and did the court rule in your favor on that? The court did not specifically address what items were or were not properly seized. The court merely found that the participation of the Blue Cross Blue Shield investigators... When you say the court, do you mean this civil court or that criminal court? The criminal court found that the participation was not unconstitutional per se. Now, with respect to the civil court... And presumably did not find that the objects, whoever seized them, were beyond the scope of the warrant. There was no specific finding in either court with respect to that. With respect to the almost exclusively on the Bray case. However, in Bray, unlike here, the court had been requested to permit civil, civilians to participate in that particular warrant execution. And the court did allow one to participate. Now, the fact that they exceeded the number that the court allowed, and that those participants did things such as videotape inside, those were separate issues which have no application here. In this particular case, what we are contending is that the Blue Cross Blue Shield participation was limited, excuse me, was really just a private access through the law enforcement who lended their badges to allow this to occur. And I believe my time is up. If you want to save your time, use more time, but it will come out of your rebuttal. Thank you. You'll have your four minutes for rebuttal, sir. Thank you. Good afternoon. Assistant Attorney General John Fadinski, I am here on behalf of the Michigan State Police Defendants, that's Detective Guy Cram and Trooper Gina Gettle. With me are two sets of co-defendants. We'll be sharing the time equally, so I intend to speak five minutes or less. Mr. Jarrett didn't get to the bank warrants. I may or may not talk about that, but regarding the civilian participation in the search, that was litigated up and down in state court and no material facts are in dispute regarding any of that. I would direct the court's attention to the two-day evidentiary hearing that occurred in the state court where testimony was given unrebutted that the detective was in charge of everything. She decided what to seize. It went through her. She determined what to seize, and then it went to Trooper Gina Gettle. We didn't hear a breath of a word about Trooper Gettle in this argument, nor if you look at the appellant's brief, do you see any argument regarding Trooper Gettle? Is it accurate, though, that let's say that Casteline or some Blue Cross person was the first one to lay his hands on the passport and the Caribbean records, and what then that was approved or was authorized for seizure by CRAM? That's correct, Your Honor, and the passports, and I will say that there was no ruling on exceeding the scope of the warrant at the residence or any of the offices because that specific challenge was never made in state court or here in federal court. The challenge was about participation of civilians. With respect to the passport, it actually fell within the four corners of the warrant because the language in the warrant said this includes review and seizure of any personal documents and mail that are located at the residence. That's page ID number 1450. And the passport and the holdings elsewhere are relevant from a reasonable law enforcement officer's perspective in terms of what was done with the fruits of this crime. So you're saying they didn't challenge that? That's correct. They would have a lot better case if the civilian was the one who grabbed something and then it turned out it was too broad. Sure, and I think they'd have a better case if Blue Cross in fact ran the show, but I would dispute what was argued before this court. Blue Cross did not run the show at all. Detective Guy Cram was in charge. Trooper Guetta was there simply as a uniformed presence and to log the evidence, and in fact, it's a case of no good deed going unpunished because the whole point of having Blue Cross present was to serve the law enforcement objective and to minimize disruption to this business. They didn't come after hours because they didn't want to do a forced entry. They wanted to come during business hours when employees would be present and when Dr. Sampson might be present to submit a voluntary interview. He denied the request to be interviewed, but with Blue Cross present, they know the codes, they know the billing practices, they know the specific kinds of documents that would support the criminal investigation and tend to prove or disprove the allegations. Without them, your argument would be you would have just grabbed everything in the building? That's correct. Without them, instead of taking 109 patient files, they may have taken 1,000 patient files, and instead of disrupting the business for two hours, it would have been eight hours. And we should also recall this happened right around the holiday weekend and there were three different locations. The detective, with her limited resources and limited state police, county, and local police resources, had to conduct three searches in one day. By having these Blue Cross individuals present, who, by the way, were mostly former law enforcement themselves, who are aware of the Fourth Amendment, who are aware of constitutional rights, they were all responding to her directives. The detective was in charge of this investigation. So in terms of civilian participation, qualified immunity should attach. Let me just briefly address the bank warrants. Before you go to that, who made the decision as to how many Blue Cross, Blue Shield people should come for the execution of the warrant and who those people should be? Guy Cram made the request to Kasseline, and Kasseline told her we have eight people available, and that's the eight that they got. And I believe there were five, six, perhaps even seven law enforcement. So it wasn't that bad a ratio in terms of civilians and law enforcement at these locations. So the selection of people was based partly on availability rather than strictly on expertise and familiarity with billing codes and that kind of thing? Well, no, the whole point was their expertise, but they didn't need 30 people from Blue Cross. They only needed a limited number, and in most cases it appeared to be one law enforcement person and one Blue Cross person paired up at this pre-raid meeting, or in some cases one and then two. And then let me just briefly say regarding the warrant on the bank, my client personally didn't go there to execute it. Those who did go to execute it relied on the bank's expertise in terms of which of these accounts fall within the terms of the warrant, and Dr. Sampson was an authorized signer for the LLC that they're now challenging at the Citizens Bank. And so for all those reasons, they should get qualified immunity on the financial warrants too. Thank you. Counsel? Good afternoon, Your Honor. Gus Morris is my name. I represent in this case the detective from Blackmon Township Police Department, Robert Schrock, and the township itself. Detective Schrock, I think, is once removed from the qualified immunity argument with respect to the execution of the warrant. He was not involved in any of the decision-making process with respect to the involvement of Blue Cross Blue Shield. He was part of a task force and through his department was assigned to the task force to assist the state police as the state police saw fit. So it's my argument that Judge Cox got it right with respect to the qualified immunity argument as to Schrock. The plaintiff, I think, concedes in his brief that when you conduct a qualified immunity analysis, it must be fact-specific as to each officer involved. However, then he proceeds in his argument to lump all of them together and not really address Officer Schrock specifically. I think my recollection is his name is only mentioned one time in the argument portion of the brief, and, again, it's lumped together. If the argument is Blue Cross Blue Shield's participation in the execution of the warrant violates the Fourth Amendment, then for a qualified immunity analysis, what was the involvement of the officer in that decision-making process with respect to the involvement? Interestingly, the plaintiff's Second Amendment complaint does not even allege that Schrock was involved in that process, and, of course, there's no evidence of that either. But the complaint specifically says that it was Guy Cram that, quote, invited Blue Cross Blue Shield people to participate and allowed them to take quarters. From your point of view, what exactly did Schrock do? What he was told, which was to execute the warrant at the business and the home with the assistance of a Blue Cross Blue Shield investigator who could help direct him as to what documents to take that had the billing information and so forth in it, which was all then cleared through the detective that was running the operation. He also was present when patients as well as employees of the doctor were interviewed. The investigator for Blue Cross Blue Shield sometimes conducted the interview in the presence of Officer Schrock, who took notes and then incorporated the information learned in the interviews in his narrative report. And that's the sum total of it. In terms then of the, you might say, physical seizure would have been what? He took some documents or objects that had been pointed out to or already grabbed by the Blue Cross people? Yeah, I think the testimony was that what he took was stuff that he grabbed or that was pointed to him. I don't think there was anything, any testimony that the Blue Cross Blue Shield investigator took something, handed it to him, and then he forwarded it. I think he was there when the documents that he was involved in investigating and taking were taken and confirmed with the presence of the Blue Cross Blue Shield investigator in aiding his law enforcement tasks in determining whether or not this was something that was relevant to the billing issue and the billing codes and so forth with respect to the patient. And again, Judge Cox gets it right. When you look at the case law, Bray was mentioned, Bills and the Wilson case, but the U.S. versus Clouston case, which is also cited, does say that outside involvement in the execution of the warrant is sometimes permissible. And from the perspective of an objectively reasonable law enforcement officer, certainly from Detective Schrock's perspective, because there were outside investigators there, and since the case law said outside involvement is sometimes permissible, an objectively reasonable police officer in Schrock's position could have believed that the presence of the Blue Cross Blue Shield investigators was not in violation of the Fourth Amendment. And therefore, I think that's the test in terms of whether or not he's entitled to qualified immunity. I have about a minute left. I did want to raise the issue of concession. This case procedurally had an early motion for qualified immunity with respect to the state police defendants, and then our motion came later, but in response to the initial motion, the plaintiff conceded in his brief that Bray, quote, appears to present an insurmountable hurdle, and then moves on with respect to, but we're only seeking injunctive relief, so it doesn't matter, qualified immunity doesn't apply. So I think there's a concession here in the briefs by the plaintiff and through his attorney that, in fact, Bray does control on the qualified immunity issue. And the last thing I want to say in my few seconds remaining is that the Monell claim against the township cannot survive because, first of all, there's no underlying constitutional violation, and I think if you read the record in a couple of areas, the counterstatement of facts and the response to our summary judgment motion, even plaintiff concedes, quote, that Schrock had extensive experience and training in handling fraud cases. Thank you, counsel. Thank you. It's fired. Thank you. Good afternoon. May it please the Court. Marcy Stepanski on behalf of the Jackson County Defendant's Appellees. I would just simply echo the sentiments and the comments made by Brother Counsel with respect to the civilian participation in the search, and I would like to focus my attention on seizure of the bank accounts. Detective Rose from the Jackson County Sheriff's Department did go to the Citizens Bank to serve the warrant and did receive assistance from the bank personnel in seizing the accounts that were listed in the search warrant. The warrant was already prepared. It was a facially valid warrant. Judge Cox correctly held that Detective Rose properly relied on the warrant. There would be no reason for him to suspect there was anything deficient in it, and given the technology and the bank's records and their access to it, he was within the constitutional parameters to allow the bank personnel to gather the records and seize the appropriate ones. The state court ordered all the money returned, is that right? The state court did, but with respect to qualified immunity, we look at whether a reasonable officer in Detective Rose's position would have known that there was something, and it's a very high standard as Judge Cox detailed in his opinion, it would have to be obvious that there was something deficient about the warrant given the fact that it was judicially authorized. And in this case, there simply wasn't. You would have to look not only at the four corners of the warrant, but also go back and look at state statute. Why did the court order the money returned? I'm sorry, Your Honor? Why did the state court order the money returned? There was a problem with the statute, and that's what Judge Cox focused on, is that the accounts that were seized were not specifically listed in the statute as being the type of thing that would be authorized to be seizable. And Judge, I'm sorry, obviously the state court that authorized the warrant disagreed with that, and the point is Detective Rose would have no idea that the warrant that was authorized by the court would have been deficient. He would have had to confer with the statute to make that determination, and we have plenty of case law that says that officers aren't legal technicians, that they can look at the four corners of the warrant. Unless it's patently obvious that something was wrong with it, he can rely on it. And then the other issue with respect to the bank accounts has to do with monies that were seized from the Fourth Street Properties LLC, and the plaintiff argues that those were improperly seized because they were not in Dr. Sampson's name. However, Dr. Sampson was the signer on that account, and that was part of what the bank personnel did when they applied the warrant to the accounts and the records and monies that were belonging to the plaintiffs in this case. So Judge Cox correctly held that there was no clearly established law indicating that it was improper to rely on the bank personnel to assist with the seizure of the monies, and there was no underlying constitutional violation and correctly applied qualified immunity. Did Judge Cox actually rule that there was no constitutional violation, or did he just go on the fact that it wasn't clearly established? I think he did both. He said that Detective Rose would not have known that because he wasn't the one who personally seized the monies. So he said, I find it difficult to see how he could have violated someone's constitutional rights when it wasn't his actual doing, his actual seizing of the monies. And in addition to that, there was no clearly established law in January 2010 that would have suggested to him that it was improper to rely on the bank personnel to sift through their own records, make the determination between what accounts belonged to those listed in the warrant. So unless there are any questions for me, I will rest on my brief and ask the Court to affirm. Thank you. Counsel? Jarrett, you have four minutes for rebuttal. Thank you. I'd like to respond first to Judge Clay's question about whose decision it was with respect to the civilian participants. That was exclusively Mr. Casteline's. Lisa G. Cram testified that she merely indicated that Blue Cross Blue Shield investigators could come along. It was Mr. Casteline who determined the number and the individual participants. That was exclusively Blue Cross Blue Shield. With respect to Judge Gilman's question about why the Court ordered the money returned, this was a complaint based upon an audit which covered the years 2005 through 2008, and yet the complaint occurs in January of 2010. There was no reason to believe that that money was evidence of anything. The money in my client's accounts in 2010 was evidence of potential crimes that occurred five years earlier. And there had been no cases against my client, criminal or civil, initiated, much less was there a judgment, an order of forfeiture, or any other order of the Court which would allow for the seizure of money. This amounted to nothing more than prejudgment garnishment, which the Supreme Court held unconstitutional back in the 1960s, so it was clearly a well-established right to be free from. There was no basis to seize this money, and yet G. Cramm assisted Blue Cross Blue Shield in resisting the return of the money afterwards. Is that the basis on which the state court ruled? Your adversary seemed to say it was having to do with the exact language of the state statute, not a... She's incorrect. Okay. If you would look at the judge's opinion, he very clearly says that the money was not evidence of a crime, that money in the accounts which could not be traced to its source did not evidence anything with respect... Do we have that opinion in the record, or do we need to go outside to find it? It is in the record, Your Honor. Do you have a citation? I don't have it right at my fingertips, but we both referred to it throughout our briefs, and it is part of the record. And so she is incorrect. The money was ordered returned because there was no basis to take it in the first place. And even after it had been seized and ordered returned, G. Cramm assisted Blue Cross Blue Shield in resisting that, and Blue Cross Blue Shield relied upon things that they seized at the site of the search warrant to formulate an affidavit in filing their own civil case to try to hold on to the money that they shouldn't have taken in the first place. And to answer Judge Boggs' question with respect to whether or not Lisa G. Cramm authorized the seizure of things outside of the warrant, first of all, I don't think a law enforcement person can authorize the seizure of things that are outside of the warrant under any circumstances. But secondly, I submit that Mr. Kastelein was running through the office taking anything and everything that he wanted. Certainly the passport and the property in Jamaica did not fall within any description arguable, and she merely acquiesced in that seizure, which he later used to attempt to hold on to the money, which was his stated purpose under his testimony in the first place. His purpose was to try to recoup money for Blue Cross Blue Shield. Of course, the issue is not whether Mr. Kastelein did something wrong. The question is, the suit is against these officers, right? You've got a 1983 claim of a constitutional violation by these officers. So the question is, to the officer, were they plainly incompetent in what they did? They were plainly lending their badges to Blue Cross Blue Shield to assist them in obtaining their private interests or their private rights without the benefit of a suit having been filed, without any criminal charges being pending at the time, without any kind of order from the court which allowed for the seizure of money or the participation of these individuals. Well, they had the search warrants. The search warrant didn't authorize the civilian participation. But when you say no criminal charges were pending, you very frequently have search warrants served when no criminal charges are pending. There's nothing wrong with that, right? To seek evidence, and this money was not evidence of something which may or may not have occurred five years earlier. Focusing on the money. All right. All right, counsel, thank you. The case will be submitted. Thank you very much. Clerk may call the next case.